## M. A. WHEATLEY *v.* SAMUEL HAYS' HEIRS.

[Abstract Kentucky Law Reporter, Vol. 6—517.]

**Quieting Title to Real Estate.**

Where one who is a sole defendant in a suit to subject real estate to pay his debt dies after a commissioner is appointed to sell the property, an order made to confirm a sale is void and no rights could be acquired under it. To make a valid record the court must have jurisdiction.

**Commissioner's Conveyance.**

Where the plaintiff, a creditor, buys in his debtor's real estate, but receives no deed and thereafter directs the commissioner to convey to the widow of such debtor such real estate, she having paid off the debt, and such deed is made, such widow's title becomes absolute, and the fact that the clerk has before that time erroneously entered an order that such conveyance should be made to such widow for life, and remainder to her children, who were not parties to the proceeding and who have paid no part of such debt, will not be effectual to give such children any interest in such title.

APPEAL FROM KENTON CHANCERY COURT.

January 31, 1885.

OPINION BY JUDGE PRYOR:

This action was instituted on the 9th day of September, 1882, by the children of Samuel Hays against the appellant, M. A.

Wheatley, to recover a house and lot in the city of Covington. M. A. Wheatley is the widow of Albert Wheatley and derived title to the property by devise from her husband, and he (the husband) purchased it of Nancy Hays, the mother of the appellees and the widow of Samuel Hays, and obtained from her an absolute conveyance on the 25th day of May, 1870. Nancy Hays, who sold and conveyed to Wheatley, obtained a conveyance purporting to be of the entire fee from the Commissioner of the Kenton Chancery Court on the 13th day of March, 1854, in the suit of A. L. and L. Greer against Samuel Hays, and she and her vendee, Wheatley, and his widow have been in the continued possession since that date claiming the property as their own, a period of nearly twenty-eight years before the suit was brought.

In the original petition filed by the appellees it is claimed that this house and lot was held in trust by Nancy Hays, the mother, for the children, it having been purchased with the money of their father; that she violated the trust by disposing of the property and misappropriating the proceeds, and besides sold the house and lot for greatly less than its value.

The answer filed denies all of the material statements of the petition and relies on the conveyance made by the Commissioner to Mrs. Hays and the deed from her to Albert Wheatley who devised it to appellant, and also alleges that when sold to Wheatley it was with the consent and knowledge of the children. An amended answer was also filed setting up a quit-claim deed to the property from three of the children, and this deed was obtained before an abstract of the title was made, but when made the title was accepted, Wheatley believing that the grantor, Mrs. Hays, was invested with a perfect title.

The reply of appellees asserts that their mother claimed under the deed from the Commissioner, and that the three appellees who conveyed to Wheatley did so in ignorance of their rights, and that Wheatley's representations to them that they had no title were false and fraudulent.

An amended petition was filed by the appellees on the 12th of February, 1883, in which it is alleged in the action of A. L. and L. Greer against their father, Samuel Hays, the said Greers assigned their bid to Nancy Hays for life, remainder to her children, and that at the October term of said court an order was made in that

action on the motion of the complainant confirming the Master's report of sale and directing him to make a deed to Nancy Hays for life, remainder to her children; that their mother is dead and they ask judgment for the property and the rents.

To this amended petition the appellant filed an answer alleging that Samuel Hays was the sole defendant in the action by the Greers, and that he died in September, 1852, before the order of October, 1852, confirming the Commissioner's report of sale was made or the order entered directing the deed made to Nancy Hays for life, remainder to her children; that no order of revivor was ever had; that Nancy Hays paid to Greers the money due on their debt, and that the Greers assigned their bid to Nancy Hays alone; that said order was entered by mistake and without the knowledge of Nancy Hays, and that the conveyance was made by the Commissioner to Nancy Hays under an order of the March term, 1854. That order is found or set forth in the third amended answer offered to be filed and made part of the record, and is as follows:

"March 7, 1854.

"*Greer v. Hays.*

"On the motion of the plaintiff the Master is directed to convey. to Nancy Hays the ground purchased by the plaintiff."

The order directing the conveyance to Mrs. Hays for life, with remainder to the children, was entered in October, 1852, near eighteen months prior to the order of March 7, 1854.

There is also an order entered March 22, 1853, about five months after the order of October, 1852, that reads as follows:

"The Master is directed to make a deed to Nancy Hays, the purchaser, and report."

The right of appellees to recover is based on the order entered in the case of Greer against Hays, by which the Commissioner is directed to invest them with title, and the effect of that order is the principal and, in fact, the only question necessary to be considered.

On the 11th of November, 1851, Samuel Hays, the father of these appellees, conveyed to John B. Casey in trust this real estate in controversy and all other property held by him, "to have and to hold the same for the use and benefit of Nancy Hays, her heirs and assigns forever." Prior to this conveyance Samuel Hays had executed a mortgage to A. L. & L. Greer on the property in con-

troversy, and in December, 1850, they filed their suit to foreclose the mortgage, making Samuel Hays the sole defendant. Neither the wife nor her husband could then have been made parties, as the deed of trust was executed after the action of Greer had been instituted and whilst that suit was pending. In July, 1852, the Greers obtained their judgment, and in September following, the house and lot was sold and bid in by the Greers for $342.82, the amount of the debt and costs.

Before the confirmation of sale Hays died and there was no revivor. It is indicated in the judgment below that Hays, the defendant, was then alive, but the testimony of two of his own children and the inscription on his tombstone is conclusive it seems to us of the question, and if not, it is so distinctly alleged and not denied in the pleadings that he died in September, 1852. The order of confirmation was then void, and if void no rights could have been acquired under it by reason of the litigation. The fact placed in issue is the existence of such a record. It is not claimed that the order is erroneous but that the court had no jurisdiction to make such an order because the only defendant to the action was dead when the order was entered.

To make a valid record the court must have jurisdiction. If the proceedings are not void the record can not be denied or impeached in any collateral proceeding. *Wood v. Wood,* 78 Kentucky, 627. But has this order, whether valid or void, the effect to divest the present occupants of title? It not only confirms the sale but attempts to dispose of the rights of those who are not parties to the record and in reference to a matter not then involved in the litigation. If Mrs. Hays had paid off the incumbrance she would have been invested with a perfect title because by the conveyance to Casey the absolute right was in her subject to the mortgage lien.

The Greers had no right to sell this mortgaged property without the consent of the mortgagors except by a proceeding in equity, and before the right of redemption was gone the title must have passed under the sale to the Greers. This did not pass because the order of confirmation was void and the payment of the money by Nancy Hays removed the incumbrance and left her the title perfect. A revivor was indispensable to pass the title. The entire record shows that none of these children were claiming under this order made in the Greer suit, or even knew of its existence until after the

institution of the present action. Greer says that he agreed with Mrs. Hays that she should redeem the land and that the deed should be made to her. That he never ordered any such entry to be made, and there was no agreement that she was to have a life estate, remainder to the children. Greer was a competent witness to explain the nature of these orders, as it was no part of the transaction between Greer and the mortgagor, Hays, but an entry made affecting the interests of those who were not parties to the proceeding, and Greer was clearly a competent witness to state what he knew in reference to the order. He had made the agreement with Mrs. Hays that she was to have the title, and finds on record an order directing the deed to be made to some one else. It was therefore competent for him to explain it, and particularly when the foundation had been laid by the pleadings offered. It is evident that the last orders were made (as Greer states) to carry out the agreement as made between him and Mrs. Hays. Greer says no money had been paid him at the date of the first order. His testimony is clear and conclusive as to the agreement and the manner in which the deed was to be made, and from the time of the conveyance to Mrs. Hays she claimed to be the absolute owner and often tried to dispose of the property; this is shown by the appellees, or some of them who are now claiming this property and living with the mother at the time. Some of them were anxious for her to sell, and one or two of them received as much as $800 or $1,000 of the money paid the mother by Wheatley. Mrs. Hays, as some of the children claimed, was not making a just distribution of her estate between them. One of her sons had sued her, and was asserting his claim to an interest in the estate. He was asserting an interest in the house and lot without any evidence whatever of his right except the natural obligation of his mother to aid him. The children were in ignorance of this order, and those who signed the quit-claim deed say that it was done in ignorance of their rights and they were deceived by the representations of Wheatley.

Here is an order entered without the knowledge of the children or the mother by the complainant that was never executed and based upon no consideration whatever, made to divest the purchaser of title who with his vendee has been in possession for twenty-eight years.

He examines the title and finds an absolute conveyance made to Mrs. Hays in March, 1854, and then turns to the order book and

finds an order in March directing a conveyance made to her. She had been in the possession claiming it as her own since 1854 until 1870 under a deed from the Commissioner, and it is now maintained that a previous order directing the deed to be made to some on else or in some other way is to lose to the purchaser his estate. The conveyance and its approval under the order of March, 1854, had the effect to set aside the order under which the appellees claim, and shows when connected with the other facts of this case that it was so intended. Attaching the importance to the order that it is claimed and still it is clear that it was entered either without authority or by mistake, because it is plain from Greer's deposition that Mrs. Hays was to be invested with the title. She was in fact already invested with title subject to this incumbrance and entitled to the deed when she paid the money both as a matter of law, the title never having vested in Greer so as to authorize him to dispose of it, and under the express agreement with him that the deed was to be made as the purchaser found it.

We perceive therefore no reason why as between the widow and her children she should be denied the right of showing that she paid the money to Greer, and that by an agreement with him the title was to be made to her.

That the children or some of them were asserting claim to the property is apparent, and this was doubtless known to Wheatley.

The children who testify as to conversations with him, all of which were incompetent, say that they informed him of their claim, and that others agreed to give four thousand dollars for the property, and refused to comply with their purchase because the title was defective. The only disinterested witness who speaks for these appellees as to this sale is Francis who says he sold the property at auction to one Creighton for $4,000, and the latter seeking professional advice as to the title declined to take it. That he also sold it privately to Taylor, a son-in-law of Mrs. Hays, for the same price, and he declined to take it for the same reason. This witness further says that Wheatley inquired of him about the title, and he told him that as a real estate agent he had sold it once privately and once at auction for $4,000, and the title proved to be defective. That Wheatley said he did not care; that the children would not have courage enough to attack his claim. He afterwards told witness he had purchased it at $2,500, and witness said to him he had

obtained it at a great bargain. The private sale that Francis had made of the property was to Taylor, a son-in-law of Mrs. Hays. While the consideration paid by Wheatley can not affect the question of title, if Mrs. Hays had the power to sell, still it may be proper in view of the effect given to the order of court under which appellees claim to look to the character and value of the property when Wheatley made his purchase. It was a brick building with two rooms below and two above and an attic with kitchen. It was all in a dilapidated condition, and the buildings or better ones could have been built for $1,000. ' The testimony of Mrs. Wheatley, Howell, Martin, Anderson, Hubert, Morgan and Greer, all with but one exception show that Wheatley paid the full value of the property. These witnesses reside in Covington and speak from their own personal knowledge of its value. The husband of Mrs. Wheatley made valuable and lasting improvements on the premises, such as no one could have made unless he believed himself invested with a good title. These parties and their vendor, Mrs. Hays, had been in the actual possession for twenty-eight years prior to this suit, and while the statute of limitations could not have commenced to run against the appellees if they had a remainder interest until the termination of the life estate, we are satisfied that the order of court did not vest them with such an interest, and that the conveyance to Mrs. Hays by the Commissioner vested her with a valid title. It is insisted, however, that Mrs. Hays had no right to convey, and that the legal title is in Casey, the trustee, or his heirs. In this case the trustee held the naked legal title only. The disability of coverture had been removed and therefore the sole beneficiary (who was Mrs. Hays) could by her conveyance pass the entire estate. There was no restriction on the power of alienation contained in the deed to Casey. Besides it is claimed by the appellees, and we think properly, that she held under the Commissioner's deed and looked to that for title. She and her vendee, Wheatley, have been holding under that deed for twenty-eight years, and at this late day neither the trustee nor his heirs could recover the property. There is no pretense that Mrs. Hays had this order made or knew of its existence, nor that appellees paid any part of the consideration to Greer or to any one else. The money was paid by the mother and out of funds belonging to her in her own right by reason of the conveyance to Casey. That conveyance has not been

assailed, and from the entire facts of this record it is plain that the conveyance to Wheatley by Nancy Hays passed to him the absolute estate.

Judgment *reversed* with directions to dismiss the petition.

*James P. Tarvin, for appellant.*

*Whitaker & Durrett, for appellees.*